## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

| | |
|---|---|
| E-Z-DOCK, INC., | |
| Plaintiff, | Case No. |
| v. | JURY TRIAL DEMANDED |
| SNAP DOCK, LLC and GOLDEN MANUFACTURING, INC. d/b/a GOLDEN BOAT LIFTS, | |
| Defendants. | |

## COMPLAINT

Plaintiff E-Z-Dock, Inc. ("EZ Dock"), for its Complaint against Defendants Snap Dock, LLC and Golden Manufacturing, Inc. d/b/a Golden Boat Lifts (collectively, "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1.      This is an action for trade dress infringement under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, patent infringement under the Patent Act, 35 U.S.C. § 271, *et seq.*, and unfair competition under Florida statutory and common law based on Defendants' unauthorized commercial manufacture, distribution, use, offer for sale, and/or sale of floating dock products in violation of EZ Dock's rights.

## PARTIES

### *Plaintiff*

2.      Plaintiff EZ Dock is a Minnesota corporation with its principal place of business located at 878 HWY 60, Monett, Missouri 65708.

3.      EZ Dock is a leader in the development, manufacture, and sale of floating docks, ports, launches, and walkways.

4.      EZ Dock is a wholly-owned subsidiary of PlayPower, Inc., a global leader in the recreation industry.

### *Defendants*

5.      Defendant Golden Manufacturing, Inc. is a Florida corporation with its principal place of business located at 17611 East Street, North Fort Myers, Florida 33917.

6.      Golden Manufacturing, Inc. does business as "Golden Boat Lifts."

7.      Golden Boat Lifts is the lead U.S. distributor for defendant Snap Dock, LLC ("Snap Dock").

8.      Snap Dock is an Indiana limited liability company with its principal place of business located at 11405 North Pennsylvania Street, Suite 106, Carmel, Indiana 46032.

9.      Exhibit A is a true and correct copy of a post from Snap Dock's Instagram account (https://www.instagram.com/snapdock_usa/) on February 8,

2021, which states "We are excited to announce a partnership with @goldenboatlifts as our lead U.S. distributor!"

10.    Exhibit B is a true and correct excerpt from Golden Boat Lift's webpage https://www.goldenboatlifts.com/contact-us/, which identifies Golden Boat Lifts' location to be in North Fort Myers, Florida.

## JURISDICTION AND VENUE

11.    This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1338(b) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367. In addition, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12.    This Court has personal jurisdiction over Golden Boat Lifts because Golden Boat Lifts resides in the State of Florida as a Florida corporation with its principal place of business in this judicial district. This Court also has personal jurisdiction over Golden Boat Lifts because Golden Boat Lifts is engaged in substantial activity at its regular and established place of business within this district. This Court also has jurisdiction over Golden Boat Lifts because Golden Boat Lifts has committed acts of infringement in this district giving rise to this action, and has established more than minimum contacts within this district, such

that the exercise of jurisdiction over Golden Boat Lifts in this Court would not offend traditional notions of fair play and substantial justice.

13.    This Court has personal jurisdiction over Snap Dock because Snap Dock has committed acts of infringement in this judicial district giving rise to this action, and has established more than minimum contacts within this district, such that the exercise of jurisdiction over Snap Dock in this Court would not offend traditional notions of fair play and substantial justice. Snap Dock intentionally and voluntarily conducts business in this district and carries out the lead U.S. distribution of its products from this district.

14.    Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c) and § 1400 because Defendants conduct business in this district, have committed complained of acts in this district, and are subject to personal jurisdiction in this district.

## FACTUAL BACKGROUND

### *EZ Dock's Trade Dress*

15.    EZ Dock owns a trade dress in the distinctive oblong surface shape of its dock coupler products that provide a unique and aesthetic "dog bone" appearance ("EZ Dock's Trade Dress").

16.    For example, EZ Dock's Trade Dress is shown in the following image:

4



17.　EZ Dock's Trade Dress is primarily non-functional.

18.　EZ Dock's Trade Dress is not essential to the use, purpose, cost, or quality of floating dock products, and it is not a competitive necessity.

19.　Other brands in the market, including PolyDock, Connect-A-Dock, and Wave Armor, use different shapes and designs than EZ Dock's Trade Dress, examples of which are shown below:

| POLYDOCK | CONNECT-A-DOCK | WAVE ARMOR |
|---|---|---|
|  | | |

20.    EZ Dock's Trade Dress is a source identifier due to its distinctive design that sets EZ Dock's products apart from EZ Dock's competitors and creates a commercial impression in the minds of consumers, distributors, and other members of the marine industry identifying EZ Dock as the source of the products bearing EZ Dock's Trade Dress.

21.    EZ Dock's Trade Dress has acquired secondary meaning in the minds of consumers, distributors, and other members of the marine industry.

22.    For nearly three decades, EZ Dock has continually used EZ Dock's Trade Dress in commerce throughout the United States for its floating dock products; has invested substantial time, effort, and financial resources to promoting EZ Dock's Trade Dress as a brand identifier for EZ Dock; and has regularly featured and prominently displayed EZ Dock's Trade Dress in its marketing materials, including, for example, EZ Dock's catalogs, websites, and social media.

23.    Consumers, distributors, and other members of the marine industry have come to recognize EZ Dock's Trade Dress as a source indicator; regularly comment on the unique appearance of EZ Dock couplers; and commonly purchase EZ Dock couplers by placing orders for "dog bones" or "half dog bones" instead of using actual names of EZ Dock's products.

24.    Defendants are infringing EZ Dock's Trade Dress rights by using EZ Dock's Trade Dress in a manner that has caused and/or is likely to cause

significant confusion, mistake, and/or deception in the market, including in this judicial district.

25.     Snap Dock is manufacturing, using, marketing, advertising, promoting, offering for sale, and selling dock coupler products containing EZ Dock's Trade Dress in U.S. commerce.

26.     <u>Exhibit C</u> is a true and correct copy of Snap Dock's 2021 Brochure from Snap Dock's webpage https://snapdock.com/snap-dock-2020-brochure-2/, excerpts of which are below:



27.     Golden Boat Lifts is using, marketing, advertising, promoting, offering for sale, selling, and distributing Snap Dock's dock coupler products containing EZ Dock's Trade Dress in U.S. commerce.

28.     <u>Exhibit D</u> is a true and correct copy of Golden Boat Lift's webpage https://www.goldenboatlifts.com/snap-dock/.

29.     Exhibit E is a true and correct copy of a post on Golden Boat Lift's Instagram account (https://www.instagram.com/goldenboatlifts/) from April 2, 2021.

30.     Golden Boat Lifts is the lead U.S. distributor for Snap Dock's dock coupler products.

31.     EZ Dock has never authorized Defendants to use EZ Dock's Trade Dress.

32.     EZ Dock has never authorized Defendants to use any confusingly similar variation of EZ Dock's Trade Dress.

33.     Defendants' unauthorized use in commerce of EZ Dock's Trade Dress is likely to deceive consumers, distributors, and other members of the marine industry as to the origin, source, sponsorship, or affiliation of Snap Dock's products and is likely to cause consumers, distributors, and other members of the marine industry to believe, contrary to fact, that Snap Dock's products are sold, authorized, endorsed, or sponsored by EZ Dock, or that Defendants are in some way affiliated with or sponsored by EZ Dock.

34.     Snap Dock's dock coupler products are confusingly similar to EZ Dock's Trade Dress based both on side-by-side comparisons and on comparing how Snap Dock's and EZ Dock's dock coupler products are assembled, displayed, and used in the market, an example of which follows:

| EZ DOCK | SNAP DOCK |
|---------|-----------|
|  | |

35.     On information and belief, Defendants have intentionally copied EZ Dock's Trade Dress and have targeted the same consumers, distributors, and trade channels as EZ Dock's Trade Dress in an effort to divert sales from EZ Dock to Defendants.

36.     EZ Dock's Trade Dress acquired secondary meaning in the minds of consumers, distributors, and other members of the marine industry before Defendants began using EZ Dock's Trade Dress.

37.     On information and belief, Defendants' use of EZ Dock's Trade Dress is part of an intentional and ongoing effort to unfairly trade on the goodwill and reputation that EZ Dock has established over the past three decades and to confuse

consumers, distributors, and other members of the marine industry into purchasing Snap Dock's products instead of EZ Dock's products.

38.    Among other things, Snap Dock previously attempted to pass off EZ Dock's products as those of Snap Dock, by displaying the following EZ Dock copyrighted product images that were displayed on EZ Dock's website and marketing materials on Snap Dock's website and Facebook page as if they were Snap Dock's own images and product:




*EZ Dock's '872 Patent*

39.    EZ Dock owns United States Patent No. 7,069,872 ("the '872 Patent").

40.    Exhibit F is a true and correct copy of the '872 Patent.

41.    The '872 Patent is entitled "Floating Drive-On-Watercraft Dock" and was issued on July 4, 2006.

42.     The '872 Patent has a priority date at least as early as February 6, 2004.

43.     Snap Dock is and has been infringing the '872 Patent by making, using, selling, and offering for sale in the United States its Snap Port. *See, e.g.,* Exhibit C (Snap Dock's 2021 Brochure from https://snapdock.com/snap-dock-2020-brochure-2/).

44.     Exhibit G is a true and correct true and correct copy of Snap Dock's webpage https://snapdock.com/snap-port/, an excerpt of which is below showing Snap Dock's Snap Port:



45.     Snap Dock's Snap Port violates at least claim 1 of the '872 Patent.

46.     Golden Boat Lifts is and has been infringing the '872 Patent by using, selling, and offering for sale in the United States Snap Dock's Snap Port. *See, e.g.,* Exhibit D (https://www.goldenboatlifts.com/snap-dock/).

47.     Exhibit H is a true and correct copy of a post from Golden Boat Lifts' Instagram account (https://www.instagram.com/goldenboatlifts/) on April 3, 2021.

48.     Golden Boat Lifts is the lead U.S. distributor for Snap Dock's Snap Port.

49.     On information and belief, Defendants have known of the existence of the '872 Patent, and their acts of infringement have been willful and in disregard for the '872 Patent, without any reasonable basis for believing that they had a right to engage in the infringing conduct.

50.     Among other things, Golden Boat Lifts is a former exclusive distributor of EZ Dock products.

### EZ Dock's '178 Patent

51.     EZ Dock owns United States Patent No. 7,918,178 ("the '178 Patent").

52.     Exhibit I is a true and correct copy of the '178 Patent.

53.     The '178 Patent is entitled "Modular Floating Watercraft Port Assembly" and was issued on April 5, 2011.

54.     The '178 Patent has a priority date at least as early as August 16, 2007.

55.     Snap Dock is and has been infringing the '178 Patent by making, using, selling, and offering for sale in the United States its Snap Port. *See, e.g.,* Exhibit C (Snap Dock's 2021 Brochure from https://snapdock.com/snap-dock-

2020-brochure-2/); Exhibit G (Snap Dock's webpage https://snapdock.com/snap-port/).

56.     Snap Dock's Snap Port violates at least claim 29 of the '178 Patent.

57.     Golden Boat Lifts is and has been infringing the '178 Patent by using, selling, and offering for sale in the United States Snap Dock's Snap Port. *See, e.g.,* Exhibit D (https://www.goldenboatlifts.com/snap-dock/); Exhibit H (Golden Boat Lifts' Instagram post on April 3, 2021).

58.     On information and belief, Defendants have known of the existence of the '178 Patent, and their acts of infringement have been willful and in disregard for the '178 Patent, without any reasonable basis for believing that they had a right to engage in the infringing conduct.

### EZ Dock's '366 Patent

59.     EZ Dock owns United States Patent No. 8,256,366 ("the '366 Patent").

60.     Exhibit J is a true and correct copy of the '366 Patent.

61.     The '366 Patent is entitled "Small Watercraft Boatlift" and was issued on September 4, 2012.

62.     The '366 Patent has a priority date at least as early as September 16, 2008.

63.     Snap Dock is and has been infringing the '366 Patent by offering for sale in the United States its Snap Launch.

64.     Exhibit K is a true and correct copy of Snap Dock's 2021 Brochure from Snap Dock's webpage https://snapdock.com/wp-content/uploads/2021/02/Snap-Dock-2021-Brochure-Final.pdf.

65.     Page 10 of Exhibit K includes the following image of Snap Dock's Snap Launch and states that it is "COMING SPRING 2021!":



66.     Page 6 of Exhibit K includes the above image of Snap Dock's Snap Launch and states that it is one of the "components" at the "core" of Snap Dock's "floating dock system."

67.     Snap Dock's Snap Launch violates at least claim 1 of the '366 Patent.

68.     On information and belief, Snap Dock has known of the existence of the '366 Patent, and Snap Dock's acts of infringement have been willful and in disregard for the '366 Patent, without any reasonable basis for believing that Snap Dock had a right to engage in the infringing conduct.

## COUNT I

## TRADE DRESS INFRINGEMENT

69.     EZ Dock repeats and realleges the allegations in each of the foregoing paragraphs as if fully set forth herein.

70.     Defendants have been and are infringing EZ Dock's Trade Dress in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), by manufacturing, using, marketing, advertising, promoting, offering for sale, selling and/or distributing Snap Dock's dock coupler products containing EZ Dock's Trade Dress in U.S. commerce, including in this judicial district.

71.     On information and belief, Snap Dock's dock coupler products are available to businesses and individuals throughout the United States, including in the State of Florida and this judicial district.

72.     As a direct, proximate, and foreseeable result of Defendants' trade dress infringement, EZ Dock has suffered and will continue to suffer damages in an amount to be determined at trial in excess of $75,000, exclusive of interest and costs. Under the Lanham Act, EZ Dock is entitled to both an award of damages to its own business attributable to Defendants' infringing conduct and to an award of Defendants' profits derived from their infringement. EZ Dock is also entitled to treble damages and attorneys' fees and costs under the Lanham Act due to the exceptional nature of Defendants' violations of law.

73.     As a direct, proximate, and foreseeable result of Defendants' trade dress infringement, EZ Dock has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law, including, without limitation, damage to its business reputation and loss of consumer goodwill. EZ Dock is entitled to injunctive relief.

## COUNT II

**PATENT INFRINGEMENT OF UNITED STATES PATENT NO. 7,069,872**

74.     EZ Dock repeats and realleges the allegations in each of the foregoing paragraphs 1 through 68 as if fully set forth herein.

75.     Defendants have directly infringed, and continue to directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '872 Patent by making, using, testing, selling, offering for sale and/or importing into the United States Snap Dock's Snap Port and any other Snap Dock products, either alone or in combination, that operate in a reasonably similar manner (collectively, "Snap Dock's '872 Accused Products") pursuant to 35 U.S.C. § 271(a).

76.     Snap Dock's Snap Port practices all of the claim limitations of at least claim 1 of the '872 Patent. For example, the Snap Port is a floating drive-on watercraft dock comprising a body having an upper surface, a lower surface, and front, back, and side surfaces extending between the upper and lower surfaces. The upper, lower, front, back and side surfaces define a volume. *See, e.g.,* <u>Exhibit C</u>

(Snap Dock's 2021 Brochure from https://snapdock.com/snap-dock-2020-brochure-2/); Exhibit G (Snap Dock's webpage https://snapdock.com/snap-port/). The Snap Port has a watercraft receiving area and sidewall glide assemblies as specified in claim 1.

77.   Defendants also indirectly infringe the '872 Patent by actively inducing the direct infringement under 35 U.S.C. § 271(b).

78.   Snap Dock has had knowledge that its activities concerning Snap Dock's '872 Accused Products infringe one or more claims of the '872 Patent at least as early as March 8, 2021.

79.   Golden Boats has or will have knowledge that its activities concerning Snap Dock's '872 Accused Products infringe one or more claims of the '872 Patent at least upon service of this Complaint.

80.   On information and belief, Defendants have and will continue to encourage, aid, or otherwise cause others to import, sell, offer for sale, and use the '872 Accused Products (which are acts of direct infringement of the '872 Patent) and Defendants have and will continue to encourage those acts with the specific intent to infringe one or more claims of the '872 Patent.

81.   On information and belief, Snap Dock's '872 Accused Products are available to businesses and individuals throughout the United States, including in the State of Florida and this judicial district.

82.   Defendants' infringement of the '872 Patent has caused and will continue to cause EZ Dock damages in an amount to be determined at trial in excess of $75,000, exclusive of interest and costs, for which EZ Dock is entitled to compensation pursuant to 35 U.S.C. § 284.

83.   Defendants' infringement of the '872 Patent has caused and will continue to cause EZ Dock immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. EZ Dock has no adequate remedy at law.

84.   This case is exceptional and, therefore, EZ Dock is entitled to an award of attorney fees pursuant to 35 U.S.C. § 285.

## COUNT III

**PATENT INFRINGEMENT OF UNITED STATES PATENT NO. 7,918,178**

85.   EZ Dock repeats and realleges the allegations in each of the foregoing paragraphs 1 through 68 as if fully set forth herein.

86.   Defendants have directly infringed, and continue to directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '178 Patent by making, using, testing, selling, offering for sale and/or importing into the United States Snap Dock's Snap Port and any other Snap Dock products, either alone or in combination, that operate in a reasonably similar manner (collectively, "Snap Dock's '178 Accused Products") pursuant to 35 U.S.C. § 271(a).

87.    Snap Dock's Snap Port practices all of the claim limitations of at least claim 29 of the '178 Patent. For example, the Snap Port is a floating watercraft port comprising a port member having an upper surface, a bottom surface, side surfaces, a front surface and a back surface; a cradle being formed in at least a part of said upper surface; said cradle extending rearwardly from said front surface; wherein said front surface defines an opening to said cradle which is sized and shaped complementarily to the shape of said cradle and said back surface of said port member defines an entrance to said cradle; said cradle being defined by a pair of opposed inwardly sloping walls; a plurality of roller sockets positioned along said cradle walls and rollers received in said roller sockets. The Snap Port also includes a bow stop which is separate from and mountable to said port member at the front of said port member; said bow stop comprising a top surface, a front surface, side surfaces, a back surface and a bottom surface; at least a portion of said bottom surface of said bow stop being shaped complementarily to said port cradle such that when said bow stop is mounted to said port member, said bow stop closes said opening to said cradle at the front of said port member.

88.    Defendants also indirectly infringe the '178 Patent by actively inducing the direct infringement under 35 U.S.C. § 271(b).

89.    Snap Dock has had knowledge that its activities concerning Snap Dock's '178 Accused Products infringe one or more claims of the '178 Patent at least as early as March 8, 2021.

90.    Golden Boats has or will have knowledge that its activities concerning Snap Dock's '178 Accused Products infringe one or more claims of the '178 Patent at least upon service of this Complaint.

91.    On information and belief, Defendants have and will continue to encourage, aid, or otherwise cause others to import, sell, offer for sale, and use the '178 Accused Products (which are acts of direct infringement of the '178 Patent) and Defendants have and will continue to encourage those acts with the specific intent to infringe one or more claims of the '178 Patent.

92.    On information and belief, Snap Dock's '178 Accused Products are available to businesses and individuals throughout the United States, including in the State of Florida and this judicial district.

93.    Defendants' infringement of the '178 Patent has caused and will continue to cause EZ Dock damages in an amount to be determined at trial in excess of $75,000, exclusive of interest and costs, for which EZ Dock is entitled to compensation pursuant to 35 U.S.C. § 284.

94.    Defendants' infringement of the '178 Patent has caused and will continue to cause EZ Dock immediate and irreparable harm unless such infringing

activities are enjoined by this Court pursuant to 35 U.S.C. § 283. EZ Dock has no adequate remedy at law.

95.     This case is exceptional and, therefore, EZ Dock is entitled to an award of attorney fees pursuant to 35 U.S.C. § 285.

## COUNT IV

**PATENT INFRINGEMENT OF UNITED STATES PATENT NO. 8,256,366**

96.     EZ Dock repeats and realleges the allegations in each of the foregoing paragraphs 1 through 68 as if fully set forth herein.

97.     Snap Dock has directly infringed, and continues to directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '366 Patent by making, using, testing, selling, offering for sale and/or importing into the United States Snap Dock's Snap Launch and any other Snap Dock products, either alone or in combination, that operate in a reasonably similar manner ("Snap Dock's '366 Accused Products") pursuant to 35 U.S.C. § 271(a).

98.     Snap Dock's Snap Launch practices all of the claim limitations of at least claim 1 of the '366 Patent. For example, the Snap Launch is a boatlift for paddle or oar powered watercraft having the limitations of claim 1.

99.     Snap Dock also indirectly infringes the '366 Patent by actively inducing the direct infringement under 35 U.S.C. § 271(b).

100.   Snap Dock has had knowledge that its activities concerning Snap Dock's '366 Accused Products infringe one or more claims of the '366 Patent at least as early as March 8, 2021.

101.   On information and belief, Snap Dock has and will continue to encourage, aid, or otherwise cause others to import, sell, offer for sale, and use the '366 Accused Products (which are acts of direct infringement of the '366 Patent) and Snap Dock has and will continue to encourage those acts with the specific intent to infringe one or more claims of the '366 Patent.

102.   On information and belief, Snap Dock's '366 Accused Products are available to businesses and individuals throughout the United States, including in the State of Florida and this judicial district.

103.   Snap Dock's infringement of the '366 Patent has caused and will continue to cause EZ Dock damages in an amount to be determined at trial for which EZ Dock is entitled to compensation pursuant to 35 U.S.C. § 284.

104.   Snap Dock's infringement of the '366 Patent has caused and will continue to cause EZ Dock immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. EZ Dock has no adequate remedy at law.

105.   This case is exceptional and, therefore, EZ Dock is entitled to an award of attorney fees pursuant to 35 U.S.C. § 285.

## COUNT V

**VIOLATION OF FLORIDA DECEPTIVE TRADE PRACTICES ACT**

106.   EZ Dock repeats and realleges the allegations in each of the foregoing paragraphs 1 through 68 as if fully set forth herein.

107.   Defendants' acts constitute unfair competition in violation of the Florida Unfair and Deceptive Trade Practices Act, Fla. Stat. § 501.204.

108.   Defendants have engaged in unfair methods of competition and unconscionable and deceptive acts or practices in the conduct of trade or commerce.

109.   As a direct, proximate, and foreseeable result of Defendants' unfair competition, EZ Dock has suffered and will continue to suffer damages in an amount to be determined at trial in excess of $75,000, exclusive of interest and costs.

110.   As a direct, proximate, and foreseeable result of Defendants' unfair competition, EZ Dock has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. EZ Dock is entitled to injunctive relief.

<u>**COUNT VI**</u>

**UNFAIR COMPETITION UNDER FLORIDA COMMON LAW**

111.   EZ Dock repeats and realleges the allegations in each of the foregoing paragraphs 1 through 68 as if fully set forth herein.

112.   Defendants' acts constitute unfair competition under the common law of the State of Florida.

113.   As a direct, proximate, and foreseeable result of Defendants' unfair competition, EZ Dock has suffered and will continue to suffer damages in an amount to be determined at trial in excess of $75,000, exclusive of interest and costs.

114.   As a direct, proximate, and foreseeable result of Defendants' conduct, EZ Dock has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. EZ Dock is entitled to injunctive relief.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, EZ Dock respectfully requests that the Court:

1.     Adjudge that Defendants have infringed EZ Dock's Trade Dress in violation of the Lanham Act;

2.     Adjudge that Defendants have infringed one or more claims of EZ Dock's '872 and '178 Patents in violation of the Patent Act;

3.     Adjudge that Snap Dock has infringed one or more claims of EZ Dock's '366 Patent in violation of the Patent Act;

4.     Adjudge that Defendants have unfairly competed with EZ Dock in violation of the Florida Unfair and Deceptive Trade Practices Act and Florida common law;

5.     Permanently enjoin Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons or entities from infringing and unfairly competing with EZ Dock's Trade Dress and EZ Dock's '872 and '178 Patents;

6.     Permanently enjoin Snap Dock, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons or entities from infringing and unfairly competing with EZ Dock's '366 Patent;

7.     Order Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons or entities to destroy, at their own expense, all products and materials in their possession that infringe and unfairly compete with EZ Dock's Trade Dress and EZ Dock's '872 and '178 Patents;

8.      Order Snap Dock, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons or entities to destroy, at their own expense, all products and materials in their possession that infringe and unfairly compete with EZ Dock's '366 Patent;

9.      Order Defendants to account and pay damages adequate to compensate EZ Dock for Defendants' infringement and unfair competition, including pre-judgment and post-judgment interest and costs;

10.     Order that the damages award be increased up to three times the actual amount assessed;

11.     Declare this case exceptional and award EZ Dock its reasonable attorney fees; and

12.     Award such other and further relief as this Court deems just and proper.

**E-Z-Dock, Inc.**

/s/ Alejandro Fernandez

Alejandro Fernandez
AKERMAN LLP
401 East Jackson Street
Suite 1700
Tampa, FL 33602
Tel: (813) 223-7333
Fax: (813) 223-2837
alex.fernandez@akerman.com

Brian C. Bianco
Julia R. Lissner
AKERMAN LLP
71 South Wacker Drive
46th Floor
Chicago, IL 60606
Tel: (312) 634-5700
Fax: (312) 424-1905
brian.bianco@akerman.com
julia.lissner@akerman.com
(*pro hac vice* applications to be
submitted)

*Counsel for Plaintiff E-Z-Dock, Inc.*

## DEMAND FOR JURY TRIAL

Plaintiff E-Z-Dock, Inc. hereby demands a trial by jury on all issues which may be tried to a jury.

/s/ Alejandro Fernandez

Alejandro Fernandez
AKERMAN LLP
401 East Jackson Street
Suite 1700
Tampa, FL 33602
Tel: (813) 223-7333
Fax: (813) 223-2837
alex.fernandez@akerman.com

Brian C. Bianco
Julia R. Lissner
AKERMAN LLP
71 South Wacker Drive
46th Floor
Chicago, IL 60606
Tel: (312) 634-5700
Fax: (312) 424-1905
brian.bianco@akerman.com
julia.lissner@akerman.com
(*pro hac vice* applications to be
submitted)

*Counsel for Plaintiff E-Z-Dock, Inc.*