UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

E-Z DOCK, INC.,

    Plaintiff,

v.                                              Case No.:   2:21-cv-450-SPC-NPM

SNAP DOCK, LLC,

    Defendant.
_____/

# OPINION AND ORDER[1]

Before the Court is Defendant Snap Dock, LLC's Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) (Doc. 56).

## Background

EZ Dock sued Snap Dock and former Defendant Golden Manufacturing for patent infringement, trade dress infringement, and related state-law claims. (Doc. 26). The Court severed the patent infringement claim against Snap Dock and transferred it to the proper venue. (Doc. 43). Snap Dock filed counterclaims, seeking declarations that it did not infringe EZ Dock's asserted trade dress or violate state unfair competition laws. (Doc. 44). EZ Dock then

---

[1] Disclaimer: Papers hyperlinked to CM/ECF may be subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or their services or products, nor does it have any agreements with them. The Court is not responsible for a hyperlink's functionality, and a failed hyperlink does not affect this Order.

dismissed its claims against Golden.  (Doc. 54).  Snap Dock now moves for a judgment on the pleadings on EZ Dock's remaining claims.

EZ Dock develops, manufactures, and sells floating docks, ports, launches, and walkways.  EZ Dock claims it owns a trade dress in the "dog bone" shape of the couplers used to connect its dock sections and accessories, as pictured below.



EZ Dock alleges Snap Dock is infringing its trade dress by selling similarly shaped couplers as part of Snap Dock's modular docking products.  Snap Dock argues EZ Dock cannot prevail because the pleadings and exhibits conclusively establish that the dog bone shape is not protectable trade dress.

## Legal Standard

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law."

2

*Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001). "If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014). To decide if judgment is appropriate, courts generally accept all material facts alleged by the non-moving party as true and view them most favorable to the nonmoving party. *Id.*

In some circumstances, exhibits can overcome the presumption that the nonmoving party's allegations are true. *Lawrence v. United States*, 597 F. App'x 599, 602 (11th Cir. 2015). The "incorporation by reference" doctrine applies when considering Rule 12(c) motions. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). If a document is not part of the pleadings, a court may nevertheless consider it without converting a Rule 12(c) motion to one for summary judgment if the document is central to the plaintiff's claim and its authenticity is unchallenged. *Horsley*, 304 F.3d at 1125. Judicially noticed facts are also fair game. *Cunningham v. District Attorney's Office for Escambia Cnty.*, 592 F.3d 1237, 1255 (11th Cir. 2010); *see also* Fed. R. Evid. 201.

**Discussion**

This action hinges on whether the dog bone shape of EZ Dock's couplers is protectable trade dress. "Trade dress is defined as 'the total image of a product,' which 'may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques.'" *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1288 (11th Cir. 2018) (quoting *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 980 (11th Cir. 1983)). The Lanham Act protects against trade dress infringement. *J-B Weld Co., LLC v. Gorilla Glue Co.*, 978 F.3d 778, 788 (11th Cir. 2020). To state a claim, a plaintiff must plausibly plead three elements: "(1) its trade dress is inherently distinctive or has acquired secondary meaning; (2) its trade dress is primarily non-functional; and (3) the defendant's trade dress is so similar to the plaintiff's that it is likely to cause confusion." *Id.* (internal quotation marks and citation omitted).

Snap Dock argues the pleadings and exhibits demonstrate that EZ Dock cannot satisfy the second element—non-functionality. "The functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature." *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 164 (1995). A product feature is functional "if it is essential to the use or purpose of the article or if it affects the cost or

4

quality of the article" or if the feature's exclusive use "would put competitors at a significant non-reputation-related disadvantage." *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 32 (2001).

The Court denied Snap Dock's argument in a 12(b)(6) motion because of the presumed truth of EZ Dock's allegations:

> EZ Dock pleads the dog bone shape of its coupler products is "primarily non-functional," "primarily aesthetic," "a stylistic design choice…to achieve consumer recognition," "arbitrary, incidental, and ornamental," "not the central advance in any existing or expired utility patent," "not essential to the use, purpose, cost, or quality of floating dock products," and "not a competitive necessity." (Doc. 26 at 5-6). Accepting these allegations as true, the Court finds EZ Dock's claim of non-functionality plausible. Defendants can present evidence to the contrary at a later stage of this case.

(Doc. 41 at 7-8). Snap Dock asks the Court to reconsider the issue in light of nine exhibits attached to its answer/counterclaim. The addition of exhibits is important because courts are not "required to accept as true allegations in the complaint that are contrary to factual details presented in the exhibits." *Lawrence*, 597 F. App'x at 602. "Rather, 'when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.'" *Id.* (quoting *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007).

Snap Dock's Exhibit 1 is an expired utility patent—U.S. Patent No. 5,281,055—which discloses EZ Dock's modular floating dock system, including the coupler at issue. (Doc. 44-1). EZ Dock does not dispute Exhibit 1's

5

authenticity. (Doc. 45 at 5). EZ Dock nevertheless urges the Court not to consider Exhibit 1 because it is not central to its claims. A utility patent is critical to the non-functionality element of a trade dress claim based on the patented product. *See TrafFix, infra.* So the Court considers the '055 Patent central to EZ Dock's trade dress claim. And even if the Court declined to consider Exhibit 1 as part of the pleadings, the Court can take judicial notice of the '055 Patent under Fed. R. Evid. 201. *See Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 932 n.3 (Fed. Cir. 2014) ("It is also well-established that a court may take judicial notice of patents or patent applications.") The Court has thus considered the contents of the '055 Patent as part of the pleadings and, alternatively, as a judicially noticed fact.

"A utility patent is strong evidence that the features therein claimed are functional." *TrafFix*, 532 U.S. at 29. The existence of a utility patent that describes the asserted trade dress is not necessarily conclusive. EZ Dock can prevail by carrying "the heavy burden of showing that the feature is not functional, for instance by showing that it is merely an ornamental, incidental, or arbitrary aspect of the device." *Id.* at 30. But even at this stage of the case, EZ Dock cannot simply rest on allegations that contradict the patent. *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1358 (Fed Cir. 2018) ("In ruling on a 12(b)(6) motion, a court need not accept as true

allegations that contradict matters properly subject to judicial notice or by exhibit, such as the claims and the patent specification." (cleaned up)).

Snap Dock's other eight exhibits are pictures of the coupler at issue and marketing materials describing EZ Dock's products, like websites and catalogues. The authenticity of these eight exhibits is less clear. While some of EZ Dock's pleading on that subject strains credulity—for example, EZ Dock claims it lacks sufficient knowledge to admit or deny its own phone number and the contents of its websites—the Court has not relied on Snap Docks' Exhibits 2-9.

EZ Dock argues it is *per se* inappropriate for a court to resolve a functionality dispute in a 12(c) motion. Supreme Court dicta suggests otherwise. In *TrafFix*, the Court considered whether Marketing Displays, Inc. (MDI) could assert trade dress protection in a design for a temporary traffic sign stand that had been disclosed in an expired utility patent. The design features two springs, which allows a sign to stay upright in windy conditions. After the patent expired, TrafFix began selling a sign stand based on MDI's dual-spring design, and MDI sued TrafFix for trade dress infringement. 532 U.S. at 25-26. Because the dual-spring design was both the "central advance claimed in the expired utility patent" and the "essential feature of the trade dress MDI [sought] to establish and to protect[,]" the Court found that "MDI did not, *and cannot,* carry the burden of overcoming the strong evidentiary

7

inference of functionality based on the disclosure of the dual-spring design in the claims of the expired patents." *Id.* at 30 (emphasis added).

The Supreme Court's comment that MDI *could not* overcome the inference created by the expired patents indicates that patents can conclusively prove functionality. The Court thus rejects EZ Dock's argument that a functionality determination is *per se* premature at this stage of the case. The Court must next consider whether the '055 Patent establishes the functionality of an essential feature of EZ Dock's claimed trade dress.

The invention disclosed in the '055 Patent is a floating dock "comprised of uniform floating docking sections coupled together with rubber male-type anchors which fit into female-type receiving sockets on the docking sections." (Doc. 44-1 at 2). The idea of floating docking modules was not novel, as evidenced by the prior art mentioned in the '055 Patent. (*See Id.* at 5). The central advance of the '055 Patent was the coupling system—that is, the anchors (or couplers) and corresponding sockets that turned floating docking modules into a novel product.

The '055 Patent describes the dog bone shape of the anchors and sockets as the preferred embodiment of the invention:

> While the design of the sockets **14** can vary appropriately, in the preferred embodiment, they are comprised of recesses patterned similarly to a T-shape with rounded edges…The anchors **22** are symmetrical about both their longitudinal and lateral axis and are desirably shaped so that each end can fit snugly into a receiving

> socket **14** on the docking members **12**. Each end of the anchors **22** desirably flares out into a flange so that it is wider at the ends than at its middle.

(*Id.* at 6). The patent also explains the functionality of the shape: "Additionally, the shape of the anchors and receiving sockets helps to ensure that the anchors will remain secure and the docking sections will not separate during use." (*Id.* at 7).

EZ Dock argues the dog bone shape is not functional because the '055 Patent states the socket shape "can vary appropriately." The *TrafFix* Court rejected the idea that the existence of alternative designs renders a functional feature non-functional:

> There is no need, furthermore, to engage…in speculation about other design possibilities, such as using three or four springs which might serve the same purpose…the functionality of the spring design means that competitors need not explore whether other spring juxtapositions might be used. The dual-spring design is not an arbitrary flourish in the configuration of MDI's product; it is the reason the device works. Other designs need not be attempted.

532 U.S. at 33. Likewise, the dog bone shape of the couplers is the reason EZ Dock's invention works. The possibility that Snap Dock could have used a different shape does not affect the functionality of the dog bone shape.

EZ Dock attempts to get around the functionality of the coupler's shape by limiting its trade dress claim to the "top surface portion of [its] dock coupler products…*not* the entire dock coupler product." (Doc. 60 at 7). That is a distinction without a difference. The top surface is simply a two-dimensional

slice of the coupler; there is no flourish or adornment. And the '055 Patent explains that this simple and unembellished surface design was functional, not arbitrary: "the minimal parts that make up the couplers…make their repair and maintenance easy to accomplish." (Doc. 44-1 at 7). Even if Snap Dock could conceal the shape of its couplers without reducing functionality, *TrafFix* explains why it need not:

> Because the dual-spring design is functional, it is unnecessary for competitors to explore designs to hide the springs, say, by using a box or framework to cover them…The dual-spring design assures the user the device will work. If buyers are assured the product serves its purpose by seeing the operative mechanism that in itself serves an important market need. It would be at cross-purposes to those objectives, and something of a paradox, were we to require the manufacturer to conceal the very item the user seeks.

523 U.S. at 34.

The Court finds that EZ Dock cannot satisfy the non-functionality element of its trade dress claim. The '055 Patent establishes the functionality of the dog bone shape. Proving non-functionality would necessarily involve contradicting the patent. EZ Dock cannot enjoy the protection of a full patent term, then use the Lanham Act to extend its monopoly on the patented design.

EZ Dock's state-law claims—Counts 3 and 4—are dependent on its Lanham Act claim because they are based on the same factual allegations and rely on trade dress rights to establish injury. *See Nat. Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1333 (11th Cir. 2008). EZ Dock

does not argue otherwise. Because EZ Dock cannot establish trade dress infringement, Counts 3 and 4 also fail.

That leaves only Snap Dock's counterclaims, which are defensive in nature. Snap Dock seeks declarations that EZ Dock's asserted trade dress is not protectible, that Snap Dock's coupler does not violate EZ Dock's asserted trade dress, and that Snap Dock does not violate the state law rights asserted in EZ Dock's Counts 3 and 4. It appears that by granting Snap Dock judgment on the pleadings as to EZ Dock's claims, this Order will render Snap Dock's counterclaims moot. Such a result comports with Snap Dock's statement, "Granting this motion will end this case[.]" (Doc. 56 at 2). Thus, the Court will enter judgment in Snap Dock's favor and close the case.

Accordingly, it is now **ORDERED:**

Defendant Snap Dock, LLC's Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c) (Doc. 56) is **GRANTED**. Counts 1, 3, and 4 of EZ Dock's Amended Complaint (Doc. 26) are **DISMISSED with prejudice**. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment for Snap Dock and against EZ Dock, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on September 9, 2022.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record

11